UNITED STATES, Appellee

v.

Brent A. CAMPBELL, Captain
U.S. Air Force, Appellant

No. 11-0403

Crim. App. No. 37460

United States Court of Appeals for the Armed Forces

Argued October 25, 2011

Decided March 1, 2012

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN and RYAN, JJ., and COX, S.J., joined.  STUCKY, J., filed
a separate opinion concurring in the result.


Counsel

For Appellant:  Captain Nathan A. White (argued); Colonel Eric
N. Eklund and Major Michael S. Kerr (on brief); Lieutenant
Colonel Gail E. Crawford and Major Reggie D. Yager.

For Appellee:  Lieutenant Colonel Linell A. Letendre (argued);
Colonel Don M. Christensen and Gerald R. Bruce, Esq. (on brief).

Military Judge:  Charles E. Wiedie


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Campbell, No. 11-0403/AF

Chief Judge BAKER delivered the opinion of the Court.

Contrary to his pleas Appellant was convicted of one specification of making a false official statement on divers occasions, one specification of possession on divers occasions of controlled substances, and one specification of larceny, on divers occasions, of military property of a value less than $500.00 in violation of Articles 107, 112a, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 912a, 921 (2006). Appellant was adjudged a dismissal from the service, and the sentence was approved by the convening authority. The United States Air Force Court of Criminal Appeals affirmed. United States v. Campbell, No. ACM 37460, 2011 CCA LEXIS 36, at *6, 2011 WL 6010259, at *2 (A.F. Ct. Crim. App. Jan. 31, 2011). The issue for review before this Court is as follows:

> WHETHER THE MILITARY JUDGE ERRED, AFTER FINDING ALL THREE CHARGES AROSE OUT OF THE SAME TRANSACTION AND WERE PART OF THE SAME IMPULSE, BY MERGING THEM FOR SENTENCING RATHER THAN DISMISSING THEM.

## BACKGROUND

Appellant was a nurse manager assigned to the David Grant Medical Center emergency room at Travis Air Force Base. Like other registered nurses, Appellant was required to obtain medication for patients from a device for dispensing medication called a Pyxis machine. No medications were to be dispensed without a physician's order. Access to the machine was obtained

2

by entering a code verified by scanning the user's fingerprint. The user would enter or find the patient's name and enter the name of the medication from the doctor's order into the machine. The Pyxis machine would then dispense the requested medication.

In June 2007, the Chief Nurse asked for a review when she noticed discrepancies between certain patients' charts and medications dispensed at the emergency room. This initial review indicated that there were no physician's orders for medication for several of the patients. In addition, the Pyxis reports for these patients revealed that Appellant had been the nurse who withdrew the medications. Upon this discovery, a broader in-depth review was undertaken. This review revealed that out of forty-seven patient records, there were at least thirty-one occurrences where Percocet and Vicodin were withdrawn from the machine by Appellant with no corresponding physician's order. In twelve instances, medications were withdrawn after patient discharge. In one case, the report indicated that Appellant withdrew Percocet from the Pyxis machine for a patient who had a documented allergy to the medication. In another instance, the Pyxis report indicated that Appellant withdrew Percocet for a pregnant patient. At trial, the charge nurse at the emergency room testified that it would have been unusual to administer Percocet to a pregnant woman.

Appellant was ultimately charged with three specifications involving the unauthorized withdrawal and possession of Percocet and Vicodin on divers occasions. One specification charged Appellant with falsely stating he had a physician's authority to withdraw from the Pyxis machine. One specification charged Appellant with larceny of the medications from the machine. And, one specification charged Appellant with wrongfully possessing the Percocet and Vicodin obtained from the machine.[1]

---

[1] The specific charges were:

Violation of the UCMJ, Article 107

Specification: In that Captain BRENT A. CAMPBELL . . . did . . . on divers occasions between 1 September 2007 through on or about 3 December 2007, with intent to deceive, make to the David Grant Medical Center Pharmacy, an official statement, to wit: that the medication he acquired at the Pyxis MedStation was per a physician's order for administration to one particular patient, which statement was false in that the medication he acquired was not ordered by a physician to be administered to the patient and was then known by the said Captain Brent A. Campbell to be so false.

Violation of the UCMJ, Article 112a

Specification: In that Captain BRENT A. CAMPBELL . . . did . . . on divers occasions between on or about 1 September 2007 and on or about 3 December 2007, wrongfully possess some amount of Percocet, a Schedule II Controlled Substance, and some amount of Vicodin, a Schedule III Controlled Substance.

Violation of the UCMJ, Article 121

Specification: In that Captain BRENT A. CAMPBELL . . . did . . . on divers occasions between on or about 1 September 2007 and on or about 3 December 2007, steal Vicodin and Percocet tablets, military property, of a value of $500.00 or less, the property of the United States Air Force.

4

Prior to trial, the defense challenged the charges on the grounds of multiplicity and unreasonable multiplication of charges. Specifically, the defense filed a motion contending that the larceny charge was multiplicious with the possession charge.[2] Alternatively, the defense sought consolidation of the larceny specification with the possession specification "due to unreasonable multiplication of charges." During the first Article 39(a), UCMJ,[3] session in the case, the defense supplemented its motion requesting that the military judge dismiss the false statement charge and specification because it was multiplicious with the larceny specification. During argument on the motion, in addition to its position on multiplicity for findings, the defense requested, alternatively, that "the offenses be found multiplicious for sentencing, pursuant to RCM[4] 1003(c)(1)(c)." Counsel argued that the charges essentially alleged that Appellant had committed a larceny by false pretenses, albeit on divers occasions, by purporting to have a physician's authorization to obtain the medications from the Pyxis machine. In counsel's view, the charges "describe[d] substantially the same conduct in different ways."

---

[2] The motion was styled as "Defense Motion to Dismiss or Request for Other Appropriate Relief."

[3] 10 U.S.C. § 839(a) (2006).

[4] Rule for Courts-Martial (R.C.M.).

The military judge ruled that the offenses were not multiplicious.  He then addressed the issue of unreasonable multiplication of charges stating, "With unreasonable multiplication of charges, that can apply to findings or to sentencing.  Either place it would be an appropriate remedy."  However, the military judge deferred his ruling on the issue of unreasonable multiplication until sentencing, reasoning that the members could return findings of guilt on any combination of the three charged offenses.

After findings but before sentencing, the military judge revisited the issue of unreasonable multiplication of charges.  The following colloquy occurred between the military judge and the parties:

> MJ:  Before we take documentary evidence, the first issue I think we need to address is the issue that's still standing before the court, on the unreasonable multiplication of charges, and whether the three offenses should be merged as one.  You [the defense] kind of amended your position, from the time of the initial filing of the motion.  But at this point, what you're seeking, defense, is that all three offenses be merged into one.  Is that correct?
>
> ADC:  Yes, sir.
>
> MJ:  And first, Trial Counsel what's your position on that?
>
> TC:  We stand on the motion in the argument and basis with which we argued before the findings, which is that each individual charge and specification has a different intent.  So therefore, we think they should not be merged, even for sentencing purposes.

The military judge then ruled as follows:

    MJ:  Based upon the way the evidence came out during the court-martial . . . and the findings the members reached, clearly what we were talking about was one transaction.  The false official statement is kind of part of the larceny, in that, the way to commit the larceny was to make the false official statement, essentially to get the pills out of the Pyxis machine. And then the possession.  The only evidence we had of the possession would be the possession that would have occurred subsequent to the actual larceny.  I do believe that all three offenses essentially arose out of this same transaction and were part of the same impulse.[5]. . . I do believe it would be appropriate to merge the three offenses into one, for purposes of sentencing.

Footnote added.  Having so ruled, the military judge announced that the maximum punishment Appellant would face on sentencing was dismissal, forfeiture of all pay and allowances, and confinement for five years.

DISCUSSION

A military judge's decision to deny relief for unreasonable multiplication of charges is reviewed for an abuse of discretion.  United States v. Pauling, 60 M.J. 91, 95 (C.A.A.F. 2004); see also United States v. Quiroz, 55 M.J. 334, 338 (C.A.A.F. 2001).  However, before turning to Appellant's contention that the military judge did not consider the remedy of dismissal of the charges, we first address the Government's argument that Appellant waived the issue.  The Government points

---

[5] For this purpose, the military judge was addressing the specifications as if they alleged a single occurrence. Obviously, the specifications alleged numerous occurrences on "divers occasions."

7

to the colloquy above to argue defense counsel only asked for merger of the charges based upon an unreasonable multiplication of charges as opposed to dismissal of the multiplied offenses.

Clearly, defense counsel requested merger of the charges based on unreasonable multiplication before the trial and again after the findings were returned. Had the military judge merged the offenses before trial, the members would have been given a single merged specification for the merits phase of the trial. Had the military judge done so after the findings but before sentencing, the subsequent court-martial order and any supplemental orders promulgated under R.C.M. 1114(c)(1) would indicate that Appellant stood convicted of a single offense.[6] From defense counsel's perspective, merging the offenses for findings purposes would have had the same effect as dismissing them. Consequently, we conclude that defense counsel's request for merger preserved his claim on appeal regarding dismissal of any unreasonably multiplied offenses.

We turn next to Appellant's contention that the military judge failed to consider the remedy of dismissal. In United States v. Roderick, 62 M.J. 425, 433 (C.A.A.F. 2006), we held that "[d]ismissal of . . . charges is a remedy available" for

---

[6] The purpose of the promulgating order is to publish "the result of the court-martial and the convening authority's action and any later action taken on the case." R.C.M. 1114(a)(2).

8

addressing an unreasonable multiplication of charges. In Appellant's written motion prior to trial he cited Roderick. There is nothing to indicate that the military judge did not consider Appellant's written motion, and we presume he knew the holding in Roderick. See United States v. Erickson, 65 M.J. 221, 225 (C.A.A.F. 2007) ("Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." (citing United States v. Mason, 45 M.J. 483, 484 (C.A.A.F. 1997))). We therefore, do not accept Appellant's claim that the military judge failed to consider the remedy of dismissal. Of course, Appellant is not only arguing that the military judge failed to consider dismissal, but abused his discretion in not dismissing two of the three specifications.

However, before addressing Appellant's argument, we offer several points of clarification in part because the terms multiplicity, multiplicity for sentencing, and unreasonable multiplication of charges in military practice are sometimes used interchangeably as well as with uncertain definition.[7] In Quiroz, 55 M.J. at 337 (citations omitted), we highlighted the

---

[7] For a discussion of the history of these concepts and the continuing confusion surrounding them, see Michael Breslin and LeEllen Coacher, Multiplicity and Unreasonable Multiplication of Charges: A Guide to the Perplexed, 45 A.F. L. Rev. 99 (1998); Christopher Morgan, Multiplicity: Reconciling the Manual for Courts-Martial, 63 A.F. L. Rev. 23 (2009).

distinction between multiplicity and an unreasonable

multiplication of charges:

> The prohibition against multiplicity is necessary to ensure compliance with the constitutional and statutory restrictions against Double Jeopardy . . . . By contrast, the prohibition against unreasonable multiplication of charges addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion.

We also briefly discussed the concept labeled,

"multiplicity of offenses for sentencing purposes," observing

that "[t]his doctrine may well be subsumed under the concept of

an unreasonable multiplication of charges." Id. at 339. The

concept is, of course, found in R.C.M. 906(b)(12) which refers

to "multiplicity of offenses for sentencing purposes." However,

we now explicitly hold that there is only one form of

multiplicity, that which is aimed at the protection against

double jeopardy as determined using the Blockburger/Teters[8]

analysis. As a matter of logic and law, if an offense is

multiplicious for sentencing it must necessarily be

multiplicious for findings as well. Thus, it makes no sense and

is confusing to refer to "multiplicity for sentencing" as a

distinct concept since a ruling that an offense is

"multiplicious" for findings purposes necessarily results in

dismissal of the multiplied offense and obviates any issue on

---

[8] Blockburger v. United States, 284 U.S. 299 (1932); United States v. Teters, 37 M.J. 370 (C.A.A.F. 1993).

sentencing.  Further, the military judge's statement in this case that unreasonable multiplication of charges applies to findings as well as sentencing was accurate.

In Quiroz, we endorsed several factors iterated by the lower court in that case as a guide for military judges and appellate courts to consider in determining whether there has been an unreasonable multiplication of charges, including the fact that these factors are not "all-inclusive."  55 M.J. at 338-39 (citation and quotation marks omitted).  Nor is any one or more factors a prerequisite.  Likewise, one or more factors may be sufficiently compelling, without more, to warrant relief on unreasonable multiplication of charges based on prosecutorial overreaching.  See id.

Finally, unlike multiplicity -- where an offense found multiplicious for findings is necessarily multiplicious for sentencing -- the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing. For example, the charging scheme may not implicate the Quiroz factors in the same way that the sentencing exposure does.  In such a case, and as recognized in Quiroz, "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings."  Id. at 339.

Until now, military judges have used the Discussion to R.C.M. 1003(c)(1)(C) to determine whether relief on sentencing

11

is warranted under the rubric of "multiplicity for sentencing."

That Discussion suggests that relief is warranted where multiple

charges reference "a single impulse or intent," or reflect "a

unity of time" with a "connected chain of events." However,

these terms do not derive from the traditional legal test for

multiplicity found in Blockburger and Teters. Rather, they

better describe the sort of factors found in Quiroz for

determining when the charges, sentencing exposure, or both,

unduly exaggerate an accused's criminality. After Quiroz, in

military practice that is known as unreasonable multiplication

of charges. Moreover, the Quiroz factors offer greater clarity

than the Discussion to R.C.M. 1003(c)(1)(C).[9]

For a trial court, the Quiroz factors include, but are not

limited to the following:[10]

> (1) whether each charge and specification is aimed at
> distinctly separate criminal acts,

---

[9] It is our view that after Quiroz, the language in the
Discussion to R.C.M. 1003(c)(1)(C) regarding "a single impulse
or intent" is dated and too restrictive. The better approach is
to allow the military judge, in his or her discretion, to merge
the offenses for sentencing purposes by considering the Quiroz
factors and any other relevant factors that lead the military
judge to conclude that the remedy of merger for sentencing is
appropriate.

[10] The first factor adopted in Quiroz, whether the accused
objected, is an important consideration for appellate
consideration. 55 M.J. at 338. However, it is omitted here
because a military judge will invariably be addressing the issue
in the context of an objection.

> (2) whether the number of charges and specifications misrepresent or exaggerate the accused's criminality,
>
> (3) whether the number of charges and specifications unreasonably increase the accused's punitive exposure, or
>
> (4) whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges.

Id. at 338.

In summary, at trial three concepts may arise: multiplicity for double jeopardy purposes; unreasonable multiplication of charges as applied to findings and, unreasonable multiplication of charges as applied to sentence.

Turning to the case at hand, we conclude based on the Quiroz factors that the military judge did not abuse his discretion in ruling on Appellant's unreasonable multiplication motion. Applying the first factor to the charging scheme, we note that each of the offenses addresses a distinct criminal purpose. The false statement offense, for example, is aimed at the critical nature of the need for physicians' orders in an emergency room setting. The accuracy of physicians' orders is essential to patient treatment and safety. Indeed, the point is illustrated by Appellant's conduct which resulted in the perception that two patients had potentially received medicine to which they were either allergic or otherwise not suited. Likewise, the theft of medications, let alone Schedule II and

13

Schedule III narcotics,[11] raises a particular concern for hospital authorities -- military or civilian.  Aside from replacement costs, the theft of medications can leave facilities short of critical drugs at unexpected and critical times.  Similarly, Congress was concerned enough about the adverse impact of drug possession on good order and discipline that it felt it necessary to specifically address it in Article 112a, UCMJ.

In essence, the transactions at the Pyxis machine may have each represented a singular act, but each implicated multiple and significant criminal law interests, none necessarily dependent on the others.  For instance, in this case the evidence showed that Appellant falsely indicated in the Pyxis machine that he had the proper authority to retrieve the particular medication when in fact he had no such authority.  This offense was complete whether or not Appellant actually had the machine dispense the medication.  Also, theoretically, after indicating he had proper authority and after forming the requisite specific intent to steal, Appellant could nonetheless have changed his mind regarding his intent to steal after the machine dispensed the medications.  He could, at that point,

---

[11] The parties at trial stipulated that Percocet was a Schedule II Controlled Substance and that Vicodin was a Schedule III Controlled Substance as listed under the Controlled Substances Act of 1970, 21 U.S.C. § 812 (2006).

have decided to turn the medications over to proper authority and avoided wrongfully possessing the property.

Nor, do the other Quiroz factors support a conclusion that the military judge abused his discretion on findings. The record contains evidence of at least thirty-one instances where Appellant withdrew medication from the Pyxis machine without authority spanning several weeks. Accepting Appellant's theory that each was a separate larceny, conceivably, Appellant could have faced thirty-one separate specifications of larceny over the charged period. This, of course, might have potentially exposed Appellant to thirty-one years of confinement.[12] The Government's decision to charge on divers occasions only exposed Appellant to eleven years of confinement. MCM pt. IV, para. 31.e., 37.e.(1), 46.e.(1). Thus, rather than exaggerating Appellant's criminality or exposure, arguably, it was reduced.

Therefore, although the charges alleged a series of three separate criminal acts associated with withdrawal from the Pyxis machine, the military judge did not abuse his discretion by not dismissing or merging the charges for findings based on an unreasonable multiplication of charges. Within a range of possible options, the prosecution chose a middle ground between charging the conduct as larceny alone on divers occasions, as

---

[12] The maximum confinement for larceny of military property of less than $500 is one year. Manual for Courts-Martial, United States pt. IV, para. 46.e.(1) (2008 ed.) (MCM).

15

three distinct criminal acts on divers occasions, or as thirty-one separate and distinct larcenies.

At the same time, it was within the military judge's discretion to conclude that for sentencing purposes the three specifications should be merged and that it would be inappropriate to set the maximum punishment based on an aggregation of the maximum punishments for each separate offense. It is not difficult to see how the three specifications in this case might have exaggerated Appellant's criminal and punitive exposure in light of the fact that, from Appellant's perspective, he had committed one act implicating three separate criminal purposes.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Campbell, No. 11-0403/AF

STUCKY, Judge (concurring in the result):

Although I concur in affirming the judgment of the United States Air Force Court of Criminal Appeals, upon reflection I cannot join the majority in perpetuating the mess that constitutes our multiplicity and unreasonable multiplication of charges jurisprudence: "This is not justice; this is chaos!" United States v. Baker, 14 M.J. 361, 372 (C.M.A. 1983) (Cook, J., dissenting) (speaking of this Court's multiplicity jurisprudence).

The majority dispatches, correctly, the concept of multiplicity for sentencing but raises in its place a new doctrine of unreasonable multiplication of charges for sentencing. I believe that there is no legal basis for either doctrine and, instead of trying to patch holes or fabricate new doctrine in this area, we should simply adopt Supreme Court precedent: there is only one doctrine -- multiplicity.

I.

Multiplicity is a doctrine, rooted in the Constitution's Fifth Amendment Double Jeopardy Clause, which provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; see United States v. Teters, 37 M.J. 370, 373 (C.M.A. 1993). "[The Double Jeopardy Clause] protects against a second prosecution for the same offense after acquittal. It protects against a second

prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 803 (1989).

"Obviously, the scope of each of these three protections turns upon the meaning of the words 'same offense,' a phrase deceptively simple in appearance but virtually kaleidoscopic in application."  Whalen v. United States, 445 U.S. 684, 700 (1980) (Rehnquist, J., joined by Burger, C.J., dissenting).  But as the Supreme Court has recognized, when Congress creates two distinct offenses, there is a presumption "that it intends to permit cumulative sentences, and legislative silence on this specific issue does not establish an ambiguity or rebut this presumption."  Garrett v. United States, 471 U.S. 773, 793 (1985).  Thus, unless Congress has expressly stated otherwise, a multiplicity violation is determined by applying the elements test.  United States v. Morrison, 41 M.J. 482, 483 (C.A.A.F. 1995) (citing Blockburger v. United States, 284 U.S. 299 (1932)).

Insofar as this Court held in United States v. Quiroz that there exists a doctrine of unreasonable multiplication of charges separate from multiplicity, we were wrong.  See 55 M.J. 334, 345 (C.A.A.F. 2001) (Sullivan, J., dissenting) ("Judicial

2

action thus transforms a hortatory principle of military justice (that a single instance of misconduct <u>should</u> not give rise to an unreasonable multiplication of charges by the prosecution) into a legally enforceable right of an accused . . . .").  It is a judicially created doctrine that has done more harm than good and is without a basis in statute.  Military courts are Article I courts of limited jurisdiction, with powers defined entirely by statute.  <u>United States v. Wuterich</u>, 67 M.J. 63, 70 (C.A.A.F. 2008).  Congress alone defines the elements of offenses in the military, <u>see</u> <u>United States v. Jones</u>, 68 M.J. 465, 478 (C.A.A.F. 2010), and it delegated its power to determine most maximum and minimum sentences to the President, not the military judge, <u>see</u> Article 56, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 856 (2006).  Multiplicity for sentencing is a purely judge-made doctrine that has done more harm than good.  <u>See</u> <u>Quiroz</u>, 55 M.J. at 349-50 (Sullivan, J., dissenting).[1]

---

[1] The unreasonable multiplication of charges doctrine appears to stem from a misunderstanding of Colonel Winthrop's admonition that "<u>unnecessary</u> multiplication of forms of charge for the same offense should always be avoided."  William Winthrop, <u>Military Law and Precedents</u> 143 (2d ed., Government Printing Office 1920) (1895) (emphasis added).  Contrary to the treatises of the day, which encouraged pleading every possible contingency, Colonel Winthrop counseled that:

> the peculiar authority of a court-martial to make
> corrections and substitutions in its Findings, and to
> convict of a breach of discipline where the proof
> fails to establish the specific act alleged, the
> charging of the same offence under different forms is

If a conviction can be had for both offenses, that is, the offenses are not multiplicious, then the maximum sentence prescribed by the President is the total of the maximum sentences for those offenses. To the extent a remedy is needed for prosecutorial overreaching or excessive sentences falling within the prescribed maximum, Congress provided it in the statutory authority of the Courts of Criminal Appeals to "affirm only such . . . sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006). We have held that the CCAs have the power to determine whether a sentence is appropriate as a matter of fact. United States v. Baier, 60 M.J. 382, 384 (C.A.A.F. 2005) ("A Court of Criminal Appeals must determine whether it finds the sentence to be appropriate. . . . As the Army Court has recognized, Article 66(c)'s sentence appropriateness provision is a sweeping Congressional mandate to ensure a fair and just punishment for every accused.") (quotation marks and footnote omitted). This statutory power of the CCAs should be the safety valve in sentencing, rather than a judicially created doctrine that has proved exceedingly difficult to apply.

---

much less frequently called for in the military than in the civil practice.

4

II.

Whether two offenses are the same for double jeopardy purposes is a question of law we review de novo. See Costo v. United States, 904 F.2d 344, 346 (6th Cir. 1990); United States v. Brechtel, 997 F.2d 1108, 1112 (5th Cir. 1993). In this case, Appellant was convicted of making a false official statement, larceny, and unlawful possession of controlled substances. Applying the Blockburger elements test, each offense is separate from the other -- each contains an element not included in the others -- and, as Congress has been silent, we should presume that Congress intended to permit cumulative sentences. Garrett, 471 U.S. at 793. I see nothing to rebut that presumption.

Therefore, I conclude that the offenses are separate and the maximum sentence in this case should have been the cumulative maxima for the three separate offenses. The military judge therefore did err by merging the specifications for sentencing. However, the error did not stem from the military judge's failure to dismiss the specifications under United States v. Roderick, 62 M.J. 425, 433 (C.A.A.F. 2006). Rather, the military judge erred by applying the unreasonable multiplication of charges doctrine to limit the maximum punishment for charges that were not multiplicious. However,

---

Id. He was not suggesting an equitable doctrine that would limit the number of charges brought against an accused.

Appellant was not prejudiced by this error; rather, it inured to his benefit.  For this reason, I concur with the majority in affirming the judgment of the United States Air Force Court of Criminal Appeals.