# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, ALMANZA, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant TEDRICK A. WEST**
**United States Army, Appellant**

ARMY 20140500

Headquarters, United States Army Combined Arms Support Command
James W. Herring, Jr., Military Judge
Colonel Ralph J. Tremaglio III, Staff Judge Advocate (pretrial)
Lieutenant Colonel John S. Frost, Staff Judge Advocate (post-trial)

For Appellant:  Lieutenant Colonel Charles D. Lozano, JA; Major Andres Vazquez, Jr., JA; Major Daniel E. Goldman, JA (on brief); Major Andres Vazquez, Jr., JA; Major Daniel E. Goldman, JA (on reply brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major John K. Choike, JA; Captain John Gardella, JA (on brief).

24 June 2016

----------------------------------
SUMMARY DISPOSITION
----------------------------------

ALMANZA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of three specifications of failure to obey a lawful general regulation and two specifications of assault consummated by a battery, in violation of Articles 92 and 128 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928 [hereinafter UCMJ].[1]  The military judge sentenced appellant to a bad-

---

[1] Appellant pleaded guilty pursuant to a pretrial agreement.  Appellant was originally charged with one Article 120 offense, to which he pleaded not guilty, but guilty of a violation of Article 128.  He also pleaded not guilty to two Article 134 offenses (kidnapping and a general article offense for entering female soldiers'

(continued . . . )

conduct discharge, confinement for sixty days, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises one issue that merits discussion, but no relief.

## BACKGROUND

Appellant was the platoon sergeant of an Advanced Individual Training platoon at Fort Lee, Virginia. An applicable TRADOC regulation prohibited him from engaging in physical contact with trainees "for any reason other than to make necessary training-related corrections" or "where the safety of the Soldier is in question." TRADOC Reg. 350-6, para. 2-6(e) (7 Nov. 2012). Paragraph 2-6 of this regulation is entitled, "Trainee Abuse and Prohibited Practices."

The charged offenses arose from appellant's contact with two female trainees, Privates NS and JO[2] With respect to Private NS, appellant pled guilty to one specification of violating Article 92, UCMJ, by kissing her on or about 30 May 2013 (Specification 1 of Charge I), and, by exceptions and substitutions, to one specification of violating Article 128, UCMJ, by "unlawfully touching … [her] on the hips, on her clothed breast, and by kissing her on the stomach" on or about 30 May 2013 (the Specification of Charge II).[3]

When explaining why he was guilty of the Article 92 offense, appellant stated he kissed Private NS in the day room while they were talking; he did not state, and was not asked, where on Private NS's body he kissed her. When explaining why he

---

(. . . continued)
barracks rooms "without knocking, while they were in various states of undress"); before findings, these offenses were "dismissed without prejudice, to ripen into prejudice upon completion of appellate review." Also before findings, the military judge granted the government's motion to amend the remaining charges and specifications to conform to appellant's pleas.

[2] The following factual summary is drawn from the providence inquiry and Prosecution Exhibit 1, the Stipulation of Fact. The government has asked that we consider the sentencing testimony of Privates NS and JO in resolving the assignment of error. With appreciation for its candid statement that it is not aware of any precedent permitting us to do so, we decline the government's invitation to consider sentencing evidence in resolving the assignment of error.

[3] The Specification of Charge II originally alleged a violation of Article 120, UCMJ. Appellant pled not guilty to the Article 120 offense, but guilty to a violation of Article 128.

was guilty of the Article 128 offense, appellant stated that he kissed Private NS on her stomach; he first stated that this kiss occurred in the day room, but then later clarified the kiss occurred in a room called the "Rations Room," which is connected to the rear of the day room. The Stipulation of Fact states that appellant kissed Private NS on her stomach and on her body in the Rations Room (it does not mention a kiss in the day room).

With respect to Private JO, appellant pleaded guilty to one specification of violating Article 92, UCMJ, by kissing her on or about 30 May 2013 (Specification 2 of Charge I), one specification of violating Article 92, UCMJ, by touching her arm between on or about 1 May 2013 and on or about 30 June 2013 (Specification 3 of Charge I),[4] and, by exceptions, one specification of violating Article 128, UCMJ, by "unlawfully grab[bing] … [her] pants with his hand and kiss[ing] her neck" on or about 30 May 2013 (the Specification of Charge III).

When explaining why he was guilty of Specification 2 of Charge I, appellant stated that in an upstairs room in the barracks, he hugged and kissed her on the neck and then, shortly thereafter, she left the room. When explaining why he was guilty of the Specification of Charge III, appellant stated that "when I hugged her, I kissed her on the neck" and also that "I gave her a hug, in which -- when -- after I gave her the hug and she was leaning back from the hug, I grabbed her pants, and then I kissed her on the neck." These statements indicate appellant kissed Private JO once on the neck. The Stipulation of Fact, however, indicates appellant kissed Private JO twice on the neck: "He asked her for a hug and she said okay. He then hugged her and kissed her neck. She pushed him off, but he reached for and grabbed her pants at the waistline, and started kissing her neck." The military judge did not resolve this apparent inconsistency.

Appellant asserts that Specification 1 of Charge I and the Specification of Charge II constitute an unreasonable multiplication of charges as they were based on the same act of kissing Private NS on 30 May 2013. Similarly, appellant asserts that Specification 2 of Charge I and the Specification of Charge III constitute an unreasonable multiplication of charges as they were based on the same act of kissing Private JO on 30 May 2013.

Appellant did not raise the issue of unreasonable multiplication of charges at trial.

## LAW AND DISCUSSION

As appellant forfeited the issue of issue of unreasonable multiplication of charges for findings by not raising it at trial, we review using the plain error

---

[4] This offense is not at issue in this appeal and will not be discussed further.

standard. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). In order to prevail, appellant must show that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008).

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-Martial [hereinafter R.C.M.] 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?[5]
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?
>
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

---

[5] This court may grant relief under our Article 66(c), UCMJ, powers to affirm "only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." *Quiroz*, 55 M.J. at 338 (quoting UCMJ art. 66(c)). This "awesome, plenary, *de novo* power" provides us with the authority to consider all claims of unreasonable multiplication of charges, even if raised for the first time on appeal. *Id.* (quoting *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). *See also United States v. Anderson*, 68 M.J. 378, 386 (C.A.A.F. 2010) ("[A]pplication of the *Quiroz* factors involves a reasonableness determination, much like sentence appropriateness, and is a matter well within the discretion of the CCA in the exercise of its Article 66(c), UCMJ, . . . powers.").

55 M.J. at 338 (citation and quotation marks omitted, footnote added; internal alteration reflects *Quiroz's* holding, *id.* at 339, that "unreasonably" will be used rather than "unfairly").

The *Quiroz* factors in this case do not balance in favor of appellant. First, he did not raise the issue of unreasonable multiplication of charges at trial. Second, the specifications alleging a violation of a lawful general order or regulation and an assault consummated by a battery for the same conduct do not constitute an unreasonable multiplication of charges because they involve distinctly separate criminal acts. The gravamen of the assault specifications is the bodily harm appellant did to Privates NS and JO, while the gravamen of the disobedience specifications is appellant's flagrant disregard of a lawful regulation that the commanding general issued to protect trainees from abuse. Third and fourth, given the extent of appellant's criminal conduct and the terms of a pretrial agreement limiting his confinement to four months, the number of charges and specifications neither misrepresents nor exaggerates his criminality nor unreasonably increases his punitive exposure. Fifth, we see no evidence of prosecutorial overreaching or abuse in the drafting of the charges because the government simply charged appellant based on each separate, distinct criminal act he committed. Moreover, appellant specifically offered to, and did, plead guilty to each of the charges and specifications of which he was found guilty, including the charges and specifications that he now believes constitute an unreasonable multiplication of charges. Under these facts, we find that Specifications 1 and 2 of Charge I do not constitute an unreasonable multiplication of charges with the Specifications of Charges II and III.

## CONCLUSION

Having found no substantial basis in law or fact to question appellant's pleas, and finding the sentence appropriate, the findings and sentence as adjudged and approved by the convening authority are AFFIRMED.

Judge PENLAND and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

5