# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, BORGERDING[1], and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JOSHUA A. TANKERSLEY**
**United States Army, Appellant**

ARMY 20140074

Headquarters, U.S. Army Medical Department Center and School
Wade N. Faulkner, Military Judge
Colonel Jeffrey McKitrick, Staff Judge Advocate (pretrial)
Lieutenant Colonel Toshene C. Fletcher, Staff Judge Advocate (post-trial)

For Appellant:  Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Michael A. Gold, JA (on brief).

For Appellee:  Lieutenant Colonel A.G. Courie, III, JA; Captain Tara E. O'Brien (on brief).

15 August 2016

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BORGERDING, Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of disrespect towards a superior noncommissioned officer, seven specifications of making a false official statement, and four specifications of malingering in violation of Articles 91, 107, and 115, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 907, 915 (2006, 2012) [hereinafter UCMJ].  The panel sentenced appellant to a bad-conduct discharge.  The convening authority approved the sentence as adjudged.

---

[1] Judge Borgerding took final action on this case while on active duty.

This case is before the court for review under Article 66, UCMJ. Appellant assigns three errors, two of which allege the charges represent an unreasonable multiplication of charges. These allegations merit discussion but not relief. We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find they are without merit.[2]

## FACTS

Appellant was a member of the reserve component and ordered to active duty in February 2010. He deployed as a chaplain's assistant to Camp Liberty, Iraq, between March and June of 2010. He was medically evacuated from Iraq because of a non-combat shoulder injury. He received treatment at the U.S. Army Landstuhl (Germany) Regional Medical Center and was given routine screenings which indicated appellant did not suffer from traumatic brain injury (TBI). In addition, there were no notes about any traumatic brain injury or improvised explosive device (IED) blast in appellant's medical records at this time. In fact, at the time he was medically evacuated, appellant denied suffering any events that could have resulted in a concussion while deployed.

Nevertheless, after he returned to the United States, appellant began telling various health care providers at both Fort Sill, Oklahoma, and later at Fort Sam Houston, Texas, that he: 1) was involved in an IED explosion which caused him to lose consciousness for about fifteen to twenty minutes and to later throw up blood; 2) saw one of his fellow soldiers shot by a sniper; and 3) heard rocket-propelled grenade (RPG) fire on Camp Liberty and saw twenty insurgents attempting to enter Camp Liberty. Appellant claimed he had to return fire after ensuring his chaplain

---

[2] Included in this consideration are four allegations of ineffective assistance of counsel. Appellant's unsubstantiated and unsworn submission fails to demonstrate both that counsel was ineffective and that appellant was prejudiced by the result. *United States v. Gutierrez*, 66 M.J. 329, 332 (C.A.A.F. 2008) ("The burden is on [appellant] to show a reasonable probability, one sufficient to undermine the confidence in the outcome, that but for the defense counsel's ineffectiveness . . . he would not been convicted.").

Appellant also complains in his submission that he was subjected to "illegal punishment" after his trial when the trial counsel posted the results of his trial on social media, along with a misrepresentation of his crimes. While we do not find that appellant suffered any prejudice as a result of the comments or the misrepresentation, we do find the post was—at the very least—ill-advised. We remind all counsel that injudicious social media posts may reflect poorly on counsel regardless of whether they are prejudicial or a violation of any rules of professional conduct. *See generally* Army Reg. 27-26, Rules of Professional Conduct for Lawyers, Appx. B. R. 3.6 (1 May 1992).

was safe. Appellant also told his company commander that he was subjected to multiple IED blasts in Iraq and that he did missions with the 2d Infantry Division.

At trial, the government called appellant's chaplain while deployed, Captain (CPT) JJ, who testified that he and appellant spent most of their time together, with the possible exception of time spent eating and sleeping. Captain JJ further testified that no one in their unit, including appellant, was involved in an IED blast; that no soldiers in the unit were shot by snipers; and that the incident where the insurgents attempted to enter Camp Liberty and appellant protected him did not happen. Additionally, a neuropsychologist government expert witness told the panel that when he asked appellant for specific details about what happened to him during the IED blast, appellant's responses were vague and nonspecific, which was unusual in this expert's experience. Further, according to this expert witness, appellant's account of what happened after the IED explosion (he was unconscious for fifteen to twenty minutes, yet the medic simply sent him to his quarters to rest; he threw up during the night and went to the medical aid station, but there was no documentation of this visit) did not "add up with the way things normally work over there."

Appellant's medical records, as well as the testimony of some of the health care providers, show that he claimed to suffer from post traumatic stress disorder (PTSD) and TBI. However, two psychiatrists and a psychologist all testified at trial that they did not diagnose appellant with PTSD. Two of these doctors also told the panel that a diagnosis of PTSD first requires exposure to, or the witnessing of, a traumatic event. A neuropsychologist testified that not only did he not diagnose appellant with TBI, but that appellant's test results showed that he was embellishing or feigning some of his cognitive impairment in an attempt to appear as if he were brain damaged. The neuropsychologist government expert witness explained to the panel that appellant's claim that he suffered the head injury in June, did not notice symptoms until a few weeks later, and was still experiencing the symptoms fifteen months afterward "is not consistent with the way these types of concussions or brain injuries work." This expert felt that appellant was feigning[3] and there was no evidence of even mild TBI.

---

[3] Immediately following this expert witness' testimony, the military judge gave the panel the expert testimony instruction, and specifically told the panel "to the extent [they] believe that [any expert or other witness], has testified or implied that they believe a crime occurred, you may not consider this as evidence that a crime occurred." The military judge was careful to explain to the panel the difference between "medical malingering" as mentioned by the expert and a criminal definition of malingering he explained earlier in the trial. Pursuant to an earlier reference to malingering by a doctor and later a question from a panel member, the military judge had already twice before read the elements of malingering to the panel. He had also previously explained that the government had to prove all of the elements beyond a reasonable doubt before the panel could find appellant guilty.

Witness testimony and appellant's medical records show that appellant anticipated a medical evaluation board (MEB) and that appellant often inquired about benefits and awards due to him as a result of his claimed conditions. One psychologist testified that she did not see that appellant was interested in returning to service at all.

Based on these facts, the panel convicted appellant of making false official statements for his claims about his experiences in Iraq and malingering by feigning PTSD and TBI.

Prior to sentencing instructions, the military judge informed the parties that he intended to instruct that Specifications 2 and 3 as well as Specifications 5 and 6 of Charge I (malingering) were "to be considered one for sentencing purposes." Specifications 2 and 3 both charged appellant with feigning TBI, however Specification 2 alleged he committed the offense at Fort Sill, and Specification 3 alleged an offense at Fort Sam Houston. Likewise, Specification 5 charged appellant with feigning PTSD at Fort Sill and Specification 6 charged malingering later at Fort Sam Houston by again feigning PTSD.

The military judge then asked civilian defense counsel if he believed any other offenses should be considered as one for sentencing purposes. Civilian defense counsel replied only that he would like for all the offenses to be combined for sentencing purposes, but admitted that he did not have any legal arguments to make.

## LAW AND DISCUSSION

Despite the fact that he failed to make a motion at trial claiming an unreasonable multiplication of charges, appellant now on appeal asks that we: 1) dismiss all of the false official statement specifications as an unreasonable multiplication of charges for *findings* with the malingering specifications; and 2) consolidate all four specifications of malingering into one specification. As appellant forfeited this issue by not raising it at trial, we review using the plain error standard. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). In order to prevail, appellant must show that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008).

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts Martial 307(c)(4) [hereinafter R.C.M.]. The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2011) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001).

In *United States v. Quiroz*, our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?[4]

(2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338-39.

*A. False Official Statement and Malingering*

Applying the factors set forth in *Quiroz*, we find that the military judge's decision not to dismiss the false official statement specifications as an unreasonable multiplication of charges with the malingering specifications (or to merge them for sentencing) was not error, nor did his failure to sua sponte address the issue amount to plain error. First, as discussed above, appellant did not raise this particular issue at trial; thus this first factor weighs heavily against appellant.

Second, although appellant's false official statements were all made to support his feigned claims of PTSD and TBI, each offense is still aimed at a

---

[4] This court may grant relief under our Article 66(c), UCMJ, powers to affirm "only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." *Quiroz*, 55 M.J. at 338 (quoting UCMJ art. 66(c)). This "awesome, plenary, de novo power" provides us with the authority to consider all claims of unreasonable multiplication of charges, even if raised for the first time on appeal. *Id.* (quoting *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). *See also United States v. Anderson*, 68 M.J. 378, 386 (C.A.A.F. 2010) ("[A]pplication of the *Quiroz* factors involves a reasonableness determination, much like sentence appropriateness, and is a matter well within the discretion of the CCA in the exercise of its Article 66(c), UCMJ, . . . powers."). However, as a discretionary authority, noticing forfeited and waived errors is not required, and is certainly not always wise.

distinctly separate criminal act. The gravamen of making the false official statements is appellant intentionally deceived a number of health care providers and his company commander about his past experiences in Iraq and claimed to have had horrifying experiences that he simply did not have. The gravamen of the malingering offenses is appellant's attempt to feign certain disorders in hopes of receiving various unearned benefits and a medical separation from the Army.

Third, separate charges of making false official statements and malingering accurately represent appellant's criminality. In fact, it would be a misrepresentation of appellant's criminality if we were to dismiss the false official statements.

Fourth, convictions for both making false official statements and malingering do not *unreasonably* increase appellant's punitive exposure. Even if we were to find an unreasonable increase in punitive exposure, we note that appellant was not prejudiced as he was not sentenced to any confinement.

Finally, we find no evidence of prosecutorial overreaching, given the facts elicited at appellant's court-martial could support a finding of guilty to as to all of these specifications.

*B. Malingering Specifications*

As discussed above, the panel convicted appellant of two specifications of malingering with respect to PTSD and two specifications of malingering with respect to TBI, separated by the dates and locations alleged. Although the military judge sua sponte merged the four specifications into two prior to sentencing, appellant now asks we consolidate all four specifications into one malingering specification by feigning both PTSD and TBI both for purposes of findings and sentencing. We decline to do so.

First, again, appellant failed to raise the issue of unreasonable multiplication of charges for findings at trial.

Second, although related, appellant's feint of both PTSD and TBI are distinct acts as PTSD and TBI are separately diagnosed illnesses, as testified to by one of the government's expert witnesses. Moreover, appellant feigned each disorder at two different duty locations and to two different sets of medical professionals during separate time periods. He made a conscious decision to continue his false claims of TBI and PTSD at Fort Sam Houston.

Third, based on the dates, locations, and means of malingering, each specification stands on its own and accurately reflects appellant's criminality.

Fourth, and in a similar vein to the third *Quiroz* factor, the specifications do not *unreasonably* increase his punitive exposure. Again, the panel sentenced

6

appellant to a bad-conduct discharge—an authorized punishment for any one specification to which the panel found appellant guilty.

Finally, we again find no evidence of prosecutorial overreaching in charging malingering with respect to both PTSD and TBI at separate times and locations.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court