# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32343**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Anthony L. JONES**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary
Decided 15 February 2017

————————————

*Military Judge:* Shaun S. Speranza.

*Approved sentence:* Bad-conduct discharge, confinement for nine months, and reduction to E-1. Sentence adjudged 7 July 2015 by SPCM convened at Hill Air Force Base, Utah.

*For Appellant:* Major Isaac C. Keenan, USAF; Captain Allen S. Abrams, USAF.

*For Appellee:* Lieutenant Colonel Roberto Ramírez, USAF; Gerald R. Bruce, Esquire.

Before J. BROWN, BENNETT, and MINK, *Appellate Military Judges*.

Judge BENNETT delivered the opinion of the Court, in which Senior Judge J. BROWN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

BENNETT, Judge:

At a special court-martial composed of a military judge sitting alone, Appellant was convicted, in accordance with his pleas, of indecent viewing, indecent visual recording, adultery, wrongfully discovering and photographing the personal photographs of another Airman, and wrongfully searching

through and photographing the personal belongings of this same Airman.[1] The adjudged sentence was a bad-conduct discharge, confinement for nine months, forfeiture of $1,031.00 per month for nine months, and reduction to E-1. The convening authority approved the sentence except for the forfeitures; he also deferred the reduction in rank and waived all the mandatory forfeitures for the benefit of Appellant's spouse.

Appellant asserts that the military judge erred by denying the Defense motion to merge, for sentencing, the specifications of Charge I. We disagree and affirm.

## I. BACKGROUND

During the time that Appellant indecently viewed and photographed Senior Airman (SrA) LY, he and his wife lived in one part of a duplex. SrA LY, who lived in the other part of the same duplex, was their neighbor and friend. On divers occasions, Appellant knowingly and wrongfully viewed SrA LY while she was naked. He did this by peering through her blinds into her bedroom, and by drilling a peephole in her bedroom wall and looking through it. He also used his cell phone and a borescope, which he inserted into the peephole, to knowingly and wrongfully photograph SrA LY while she was naked.

## II. DISCUSSION – UNREASONABLE MULTIPLICATION OF CHARGES

Specification 1 of Charge I alleges that Appellant, on divers occasions between on or about 4 July 2014 and on or about 2 September 2014, wrongfully and knowingly viewed the private area of SrA LY, without her consent and under circumstances in which SrA LY had a reasonable expectation of privacy. The allegations of Specification 2 of Charge I are almost identical except the *actus reus* is that Appellant wrongfully and knowingly photographed SrA LY.

There was no stipulation of fact in this case. During his providency inquiry for Specification 1 of Charge I, Appellant explained that he found SrA LY very attractive and was curious to see her naked. He stated that he looked at her through the blinds of her bedroom window. He also admitted to drilling a half-inch diameter peephole in SrA LY's bedroom wall so he could view her. Appellant viewed SrA LY through the peephole more than twice, and he

---

[1] The first two convictions were for violations of Article 120c, UCMJ, 10 U.S.C. § 920c; the latter three were for violations of Article 134, UCMJ, 10 U.S.C. § 934.

viewed her breasts, buttocks, and vaginal area, at different times, while she was totally or partially undressed.

During his providence inquiry for Specification 2 of Charge I, Appellant described similar misconduct except in these instances, he used his cell phone and borescope to photograph SrA LY. Appellant used these devices to capture images of SrA LY while she was undressed. He took the pictures with his cell phone through the blinds of her bedroom window or by inserting the borescope through the peephole he had drilled in her bedroom wall. Appellant did this more than twice, photographing SrA LY's breasts, buttocks, and vaginal area.

When the military judge asked Appellant why he took the pictures, Appellant answered, "Sir, I took the pictures because I wanted to see [SrA LY] naked and I wanted to keep them." By "them," Appellant meant the images he had captured of SrA LY while she was undressed. Concerning the peephole that he drilled through SrA LY's bedroom wall, Appellant explained that he used this hole both for viewing and for photographing SrA LY.

After Appellant pleaded guilty, he unsuccessfully argued that specifications 1 and 2 of Charge I were unreasonably multiplied and should be considered one offense for sentencing purposes.[2] At trial, the gist of Appellant's argument was that he had to view SrA LY in order to photograph her, that his misconduct was the result of the same incident of poor decision-making, and not two separate criminal acts. Appellant, more or less, reiterates this argument on appeal averring that the record can only support a finding that his acts of viewing and photographing SrA LY were contemporaneous and indistinguishable, and, therefore, the military judge abused his discretion when he made findings to the contrary. We do not agree.

We review a military judge's decision to deny relief or unreasonable multiplication of charges for an abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012).

Multiplicity in violation of the Double Jeopardy Clause[3] occurs when "a court, contrary to the intent of Congress, imposes multiple convictions and

---

[2] Appellant made a similar argument for Specifications 2 and 3 of Charge II, alleging that he wrongfully discovered and photographed the personal photographs of SrA LY and wrongfully searched through and photographed her personal belongings. He was unable to convince the military judge that these two offenses were unreasonably multiplied. Even though this issue was not raised on appeal, we have considered whether these specifications were unreasonably multiplied and we find that they were not.

[3] U.S. CONST. amend. V.

punishments under different statutes for the same act or course of conduct." *United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010) (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)) (emphasis omitted). Even if charged offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to merge or dismiss certain charges and specifications. Rule for Courts-Martial 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The principle provides that the Government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). "[U]nlike multiplicity—where an offense found multiplicious for findings is necessarily multiplicious for sentencing—the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing." *Campbell*, 71 M.J. at 23.

We consider the following non-exhaustive factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?; (2) Is each charge and specification aimed at distinctly separate criminal acts?; (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?; (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (quoting *United States v. Quiroz*, 53 M.J. 600, 607 (N-M. Ct. Crim. App. 2000) (quotation marks omitted)). When the *Quiroz* factors indicate the principles of unreasonable multiplication of charges affect sentencing more than findings, "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings." *Quiroz*, 55 M.J at 339.

The record of trial provides ample support for the military judge's findings of fact. With regard to whether the specifications of Charge I allege two separate and distinct criminal acts, the military judge correctly found that Appellant viewed SrA LY through the blinds of her bedroom window and through the peephole in her bedroom wall. When asked why he drilled this hole, Appellant admitted that he did it so he could view SrA LY in her bedroom. Contrary to Appellant's argument, the record contains no evidence that

Appellant used his cell phone or borescope, in this context, for any purpose other than to photograph SrA LY.[4] In fact, Appellant made no mention of the borescope until his providence inquiry for Specification 2 of Charge I. While Appellant may have been viewing SrA LY while he was photographing her through her bedroom window and the peephole, there is sufficient factual support for military judge's conclusion that Appellant also separately viewed SrA LY through her bedroom window and the peephole without also photographing her.

Moreover, Appellant's motives for committing these two separate offenses were, in his own words, different. He viewed SrA LY because he thought she was very attractive and desired to see her naked. He photographed her because he wanted to keep nude images of SrA LY. This perhaps best underscores why these offenses are appropriately charged and punished separately. Viewing SrA LY while she was nude was one thing. When Appellant photographed SrA LY, he took the next step and, as a result, there were different potential ramifications for his victim. Appellant could have repeatedly viewed these images, duplicated them, distributed them, etc. The record may not be clear as to what Appellant may have done with these images, but it is clear that Appellant had different reasons for committing these separate offenses. This offers additional support for the military judge's conclusion that Appellant's viewing and photographing were separate offenses and properly charged that way. *See United States v. Williams*, 74 M.J. 572, 575–76 (A.F. Ct. Crim. App. 2014) (suggesting that the appellant's possession, receipt, and distribution of images of child pornography might not have been multiplicious if additional or affirmative steps separated his possession from the receipt and distribution of contraband images.); *see also United States v. Escobar*, ACM 38721, unpub. op. at 6–8 (A.F. Ct. Crim. App. 24 Mar. 2016) (finding that the appellant's convictions for possession and distribution of child pornography were not multiplicious or an unreasonable multiplication of charges where the two offenses involved additional or affirmative steps and separate criminal purposes).

---

[4] During his providence inquiry for specification 2 of Charge I, Appellant explained that he "used the borescope to look through the wall and then a cell phone to take pictures that were on the screen." Read alone, that sentence might provide some proof that Appellant did use his cell phone and borescope to view SrA LY. However, Appellant made this statement in response to questions the military judge had asked about how he took pictures of SrA LY. Thus, it is clear from the context in which this statement was given that, on these particular instances, he used the borescope and cell phone to photograph SrA LY.

Applying the *Quiroz* factors as the military judge correctly did, we find that, though Appellant raised both at trial and on appeal that these two specifications represented an unreasonable multiplication of charges, both specifications were aimed at distinctly separate criminal acts, do not misrepresent or exaggerate Appellant's criminality, do not unreasonably increase his punitive exposure, and there is no evidence of prosecutorial overreaching or abuse.

Having carefully reviewed the record, we find that the military judge applied the correct law and that his findings of fact were not clearly erroneous. Thus, we find the military judge did not abuse his discretion and was correct in not merging the specifications of Charge I for sentencing.

## III. CONCLUSION

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court