# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Francis J. CAULFIELD
### Machinery Technician Third Class (E-4), U.S. Coast Guard

**CGCMS 24478**
**Docket No. 1362**

**16 July 2013**

Special Court-Martial convened by Commanding Officer, Coast Guard Naval Engineering Support Unit Boston.  Tried at Norfolk, Virginia, on 1 November 2011.

| | |
|---|---|
| Military Judge: | LCDR Benjamin G. Karpinski, USCG |
| Trial Counsel: | LT Michael O. Walker, USCGR |
| Defense Counsel: | LT Scott B. Simpson, JAGC, USN |
| Assistant Defense Counsel: | LTJG Dennis E. Westman, JAGC, USN |
| Appellate Defense Counsel: | LT Kate J. Grossman, USCGR |
| | LT Jonathan C. Perry, USCGR |
| Appellate Government Counsel: | LCDR Vasilios Tasikas, USCG |
| | LT Amanda M. Lee, USCG |

### BEFORE
### McCLELLAND, DUIGNAN & NORRIS
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by special court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of attempted wrongful possession of Oxycodone with intent to distribute, in violation of Article 80, Uniform Code of Military Justice (UCMJ); one specification of conspiracy to possess Oxycodone with intent to distribute, in violation of Article 81, UCMJ; one specification of violating a lawful order, in violation of Article 92, UCMJ; one specification of wrongful use of cocaine, in violation of Article 112a, UCMJ; and one specification of dishonorably failing to pay a debt, in violation of Article 134, UCMJ.  The military judge sentenced Appellant to confinement for ten months, reduction to E-1, and a bad-conduct

discharge. The Convening Authority approved only so much of the sentence as provided for reduction to E-3, confinement for ten months, and a bad-conduct discharge, and suspended confinement in excess of forty-five days, all in accordance with the pretrial agreement.

Before this court, Appellant has assigned the following errors:

I.       Charge I and Charge II are multiplicious and violate Appellant's right against double jeopardy.

II.      This Court should consider the unreasonable and unexplained post-trial delay in determining the sentence that should be approved under Article 66(c).

We also note a possibly defective specification under Charge II, the conspiracy charge. We discuss all three issues and affirm.

### Conspiracy specification

The specification under Charge II alleges conspiracy to possess Oxycodone with intent to distribute. Conspicuous by its absence is any allegation that such possession would be wrongful. However, the specification does allege that Appellant and his co-conspirators conspired "to commit an offense under the Uniform Code of Military Justice."

"[I]t is not essential to the validity of the [conspiracy] charge that the offense that is the object of the agreement be described with technical precision." *United States v. Norwood*, 71 M.J. 204, 207 (C.A.A.F. 2012) (quoting *United States v. Bryant*, 30 M.J. 72, 73-74 (C.M.A. 1990)).

We are convinced that the specification is not defective. However, we urge persons drafting charges not to omit well-established words of criminality from specifications. *See Bryant*, 30 M.J. at 74.

### Multiplicity

Appellant claims that the attempt and conspiracy specifications of which he was convicted are multiplicious, and requests that one of them be dismissed. The Government responds that this issue was waived. We agree, and note that the waiver was confirmed

explicitly on the record.[1]  (R. at 102.)  However, we are moved to address multiplicity and its sibling, unreasonable multiplication of charges, in light of the record and new case law affecting those subjects.

Multiplicity claims are reviewed *de novo*.  *United States v. Paxton*, 64 M.J. 484, 490 (C.A.A.F. 2007).  "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *United States v. Teters*, 37 M.J. 370, 377 (C.M.A. 1993) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

Unreasonable multiplication of charges is reviewed for abuse of discretion.  *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004).  Factors for a trial court to consider on this issue include whether each specification is aimed at a distinct, separate criminal act, whether the number of specifications exaggerate the accused's criminality or unreasonably increase the accused's punitive exposure, and whether there is evidence of prosecutorial overreaching ("*Quiroz* factors").  *United States v. Campbell*, 71 M.J. 19, 24 (C.A.A.F. 2012) (citing *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)).

Appellant was charged with and convicted of both attempted wrongful possession of Oxycodone with intent to distribute, and conspiracy to wrongfully possess Oxycodone with intent to distribute, based on a single incident.

The elements of the attempt offense, using the details of the specification of Charge I, are:
(1) That the accused did a certain overt act;
(2) That the act was done with the specific intent to commit a certain offense under the code, namely wrongful possession of Oxycodone, a Schedule II controlled substance, with the intent to distribute;
(3) That the act amounted to more than mere preparation; and

---

[1] Appellant argues plain error, which is not available after an explicit waiver.  *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009).  Appellant claims he preserved the issue by raising multiplicity for sentencing purposes. However, his waiver explicitly gave up the right to request dismissal on the grounds of multiplicity.  (R. at 102.) Hence he waived dismissal, the very remedy he now requests.

(4) That the act apparently tended to effect the commission of wrongful possession of Oxycodone.

Manual for Courts-Martial (MCM), United States (2008 ed.), Pt. IV, ¶ 4b[2]; charge sheet at Continuation Sheet Page 1 of 2.

The elements of the conspiracy offense, using the details of the specification of Charge II, are:

(1) That the accused entered into an agreement with CC and RC to commit an offense under the code, namely possession of Oxycodone, a Schedule II controlled substance, with the intent to distribute; and

(2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused and CC and RC performed an overt act, namely, met with an undercover agent, for the purpose of bringing about the wrongful possession of Oxycodone.

MCM, Pt. IV, ¶ 5b; charge sheet at Continuation Sheet Page 1 of 2.

Applying the elements test to the two offenses, we first note that an agreement to commit an offense surely implies an intent to commit the offense. Hence both attempt and conspiracy include as elements the accused's intent to commit the target offense. It is apparent that conspiracy requires an agreement among two or more individuals, which is not required for attempt. It is also apparent that, while both offenses require an overt act, the overt act for an attempt must amount to more than mere preparation and must tend to effect the commission of the intended offense – elements that are not required for conspiracy. Clearly, the two offenses are not multiplicious under the elements test.

However, the military judge, in explaining the elements to Appellant during the providence inquiry, added details concerning two overt acts to the elements of attempt.[3] One of these overt acts was the same as the overt act alleged for conspiracy.

The elements of the attempt offense, using details added by the military judge, are:

---

[2] The elements of offenses set forth in the Manual for Courts-Martial and cited in this opinion are identical in the 2008 and 2012 editions.

[3] These details can be found in the Stipulation of Fact (Prosecution Ex. 1), which was conditionally admitted (R. at 30) before the military judge explained the elements.

(1) That the accused did a certain act, that is, introduced CC and RC to one another for the purpose of purchasing OxyContin, and subsequently attended and engaged in a meeting during which CC provided $9,200 to a person known as Glen to purchase some amount of oxycodone, a Schedule II controlled substance, for the purpose of distributing that controlled substance;

(2) That the acts were done with the specific intent to commit the offense of wrongful possession of oxycodone, a Schedule II controlled substance, with the intent to distribute;

(3) That the acts amounted to more than mere preparation; and

(4) That the acts were apparently intended to bring about the commission of wrongful possession of Oxycodone with the intent to distribute.

(R. at 31-32.)

The elements of the conspiracy offense, using details added by the military judge, are:

(1) That the accused entered into an agreement with CC and RC to commit the offense of possession of oxycodone, a Schedule II controlled substance, with the intent to distribute, an offense under the Code; and

(2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused and CC and RC met with an individual known as Glen to purchase oxycodone, and that CC provided to the person known as Glen $9,200 in cash to obtain 200 OxyContin pills for the purpose of distribution, for the purpose of bringing about the object of the agreement.

(R. at 47-48.)

Before that point in the trial, the military judge inquired of counsel concerning the possibility of multiplicity and unreasonable multiplication of charges. Defense counsel averred that the attempt and conspiracy specifications were "multiplitious for sentencing," citing R.C.M.[4] 1003(c)(1)(C) Discussion. (R. at 21.) The military judge then asked questions concerning whether the specifications exaggerated Appellant's criminal liability and could increase his punishment and amounted to prosecutorial overreaching for sentencing purposes. (R. at 21-22.) Thus, the military judge used the language of the *Quiroz* factors, to the exclusion of the language of R.C.M. 1003(c)(1)(C) Discussion. In this, he anticipated the Court of Appeals for the Armed Forces' pronouncement in *Campbell* that R.C.M. 1003(c)(1)(C) Discussion "better describes the sort of factors found in *Quiroz* for determining" unreasonable multiplication of charges rather than multiplicity, and the court's suggestion that the *Quiroz* factors were a better

---

[4] Rules for Courts-Martial, MCM (2008 ed.).

guide for the military judge than the language of R.C.M. 1003(c)(1)(C) Discussion. *Campbell*, 71 M.J. at 24. The court also advised that the term "multiplicity for sentencing" should not be used. *Id.* at 23.[5]

To the military judge's questions, defense counsel responded in the affirmative, apparently taking the position that the attempt and conspiracy specifications constituted unreasonable multiplication of charges as applied to sentence, in post-*Campbell* terms. (R. at 22.) The Government did not dispute this position. (*Id.*) The military judge thereupon declared that the two specifications were "multiplitious for sentencing purposes" and that he would not consider Charge I for sentencing purposes. (*Id.*)

The military judge's later statements of the elements of the two offenses, including more factual details than are found or required in the specifications, put on conspicuous display the compelling basis for the determination that they are "multiplicious for sentencing" in the old terminology, or an unreasonable multiplication of charges in the new. They also tend to support Appellant's argument that the two offenses are, in fact, multiplicious, that is, violative of double jeopardy. However, a military judge's expansive formulation of the elements cannot infect specifications with multiplicity that are otherwise not legally multiplicious. *See United States v. Teters*, 37 M.J. 370, 377 (C.M.A. 1993). Accordingly, the military judge's statements of the elements provide no basis for us to depart from our conclusion above that the two offenses are not multiplicious under the elements test.[6]

Later in the trial, before closing for deliberations on sentencing, the military judge reiterated his determination that the attempt and conspiracy were "multiplitious for sentencing purposes" and that he would not consider Charge I (attempt) for sentencing purposes. (R. at 121.) We are confident that he did what he said he was going to do.

We agree that the attempt and conspiracy specifications, once established as findings, constitute unreasonable multiplication of charges. We conclude that the military judge did not

---

[5] R.C.M. 1003(c)(1)(C) Discussion has been revised accordingly in the 2012 edition of the MCM.
[6] We do not mean to imply that the military judge's rendition of the elements was error. During the providence inquiry, it was appropriate for him to inquire into the facts as stated in the Stipulation of Fact.

err and did not abuse his discretion in granting Appellant exactly what he requested. With due regard for our powers under Article 66, UCMJ, we are not inclined to disturb the findings or sentence on account of multiplicity or unreasonable multiplication of charges.

**Post-trial delay**

Appellant urges us to grant sentence relief on account of unreasonable post-trial delay in referral of his case to this Court.

The Convening Authority took action on 3 January 2012. The record was referred to this Court on 15 February 2012, forty-three days after the Convening Authority's action.

The Court of Appeals for the Armed Forces (CAAF) applies "a presumption of unreasonable delay that will serve to trigger the *Barker* four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial [and] where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The "*Barker* four-factor analysis" comprises consideration of the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Appellant does not claim a due process violation, but invokes *Moreno* in support of his claim that the delay in this case is unreasonable. Although the Convening Authority acted very expeditiously, beating the 120-day *Moreno* standard by fifty-seven days, the delay in referral is sufficient to raise the presumption under *Moreno*. Accordingly, we will carry out the *Barker* four-factor analysis.

Referral to this Court was delayed thirteen days beyond the thirty-day period prescribed by *Moreno*. The Government, in its brief, offers no specific explanation, but explains why referral might take longer in the Coast Guard than in the other services due to Coast Guard procedures and staffing. (Answer and Br. at 13.) We are not persuaded that the Government has

a good excuse. *See Moreno*, 63 M.J. at 137 ("The Government must provide adequate staffing . . . to fulfill its responsibility under the UCMJ . . . ."). We certainly would not support any notion that the thirty-day standard should be relaxed for the Coast Guard.

However, we consider the period between the Convening Authority's action and commencement of appellate review relatively insignificant. The first and second *Barker* factors weigh against the Government, but only slightly. As for the third and fourth factors, Appellant did not assert the right to timely referral and does not claim any prejudice. These factors do not weigh against the Government. Considering all factors, we find no due process violation.

We turn now to Appellant's argument that we should grant sentence relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), which held that we may grant relief for excessive post-trial delay without a showing of prejudice. *Id.* at 224. Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances, in exercising its responsibilities under Article 66(c), UCMJ. *Id.* We have granted such relief in several cases in the past few years. Appellant calls our attention to *United States v. Matako*, No. 24454 (C.G.Ct.Crim.App., Mar. 20, 2012), where we granted relief for twenty-four days of delay in the Convening Authority's action and thirty-four days of delay in referral to this Court.

The thirteen-day delay in this case is minimal. We decline to grant relief.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judge DUIGNAN concurs.

NORRIS, Judge (concurring in the result):

   I concur in the result, particularly with the conclusion that Appellant waived the multiplicity issue he now raises, as well as with the decision to grant no relief for post-trial delay. However, unlike the majority, I am not "moved to address multiplicity and its sibling, unreasonable multiplication of charges, in light of the record and new case law affecting those subjects." Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). When an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). In this case, Appellant signed a pretrial agreement in which, *inter alia*, he agreed not to raise a motion pursuant to R.C.M. 905, 906, or 907. One of the motions listed in R.C.M. 907 is a motion to dismiss for multiplicity. R.C.M. 907(b)(3)(B). When going over the terms of the pretrial agreement on the record, the military judge specifically asked the defense counsel if Appellant, by agreeing to this provision, was giving up his right to request dismissal on the grounds of multiplicity, and the defense counsel responded in the affirmative. (R. at 102.) The military judge further asked defense counsel if he had discussed the effect of this waiver with Appellant, and the response was again in the affirmative. *Id.* As the majority opinion recognizes, these facts constitute waiver of the issue now being appealed. That being the case, I see no reason for the further analysis and discussion contained in the majority opinion.



For the Court,


L. I. McClelland
Chief Judge