# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39853**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Kolby L. A. CARTER**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 January 2021

————————————

*Military Judge:* Colin P. Eichenberger.

*Sentence*: Sentence adjudged on 22 August 2019 by GCM convened at Scott Air Force Base, Illinois. Sentence entered by military judge on 11 December 2019: Bad-conduct discharge, confinement for 10 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Kirk W. Albertson, USAF; Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF; Captain Cortland T. Bobczynski, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges*.

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge POSCH and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas, of two specifications of attempted distribution of a controlled substance (3,4–methylenedioxymethamphetamine (MDMA) and cocaine) and one specification of attempted disposal of property (MDMA and cocaine) with the intent to prevent seizure thereof, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880;[1] and three specifications alleging use of a controlled substance (cocaine, lysergic acid diethylamide (LSD), and Adderall),[2] one specification alleging distribution of a controlled substance (cocaine), and one specification alleging introduction of a controlled substance (cocaine), in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Contrary to his pleas, Appellant also was convicted of attempted distribution of a controlled substance (marijuana) in violation of Article 80, UCMJ,[3] and use of a controlled substance (MDMA) on a single occasion, in violation of Article 112a, UCMJ. Appellant was sentenced to a bad-conduct discharge, confinement for ten months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The military judge issued the entry of judgment (EoJ) on 11 December 2019, reflecting *inter alia* no post-trial changes to the findings or sentence.

We consider three issues Appellant raises on appeal: (1) whether the military judge abused his discretion when he denied Appellant's request to merge Specification 5 (divers distribution of cocaine) and Specification 7 (introduction of cocaine with intent to distribute) of Charge II for sentencing; (2) whether the convening authority erred in denying Appellant's request to defer adjudged and mandatory forfeitures, and his failure to articulate a basis for the denial;[4]

---

[1] All references in this opinion to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise noted, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[2] Appellant pleaded guilty as charged to using cocaine on divers occasions and using Adderall. He pleaded guilty to only a single use of lysergic acid diethylamide, and not guilty to use on divers occasions as charged; the military judge found Appellant guilty of this specification consistent with his plea.

[3] Appellant was charged with the greater offense of distribution of marijuana in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.

[4] While this assignment of error is styled as "whether the convening authority erred in summarily denying Appellant's request to defer reduction in rank without viewing Appellant's request," Appellant did not request the convening authority defer reduction in rank. The record indicates the convening authority received Appellant's requests to

and (3) whether Appellant is entitled to sentence relief for unreasonable post-trial delay. We answer issue (1) in the affirmative, and provide relief accordingly. We affirm, in part, the findings and, upon reassessment, the sentence.

## I. BACKGROUND

Appellant was involved in using, distributing, and attempting to distribute several controlled substances, and he involved other Airmen in most of his offenses. At trial, he admitted to three uses of cocaine, and one use each of Adderall and LSD. He pleaded not guilty to use of MDMA on divers occasions, but the evidence showed he admitted using it once.

Appellant distributed cocaine four times: once to Senior Airman (SrA) VR, once to Ms. H, once to both SrA VR and Ms. H, and once to two other Airmen. Unbeknownst to him, SrA VR and Ms. H were working with Air Force Office of Special Investigations (AFOSI). On the occasion when he distributed to both SrA VR and Ms. H, he brought the cocaine onto Scott Air Force Base (AFB) to distribute it; the other distributions occurred off base. SrA VR and Ms. H provided Appellant money to purchase cocaine for them. The two other Airmen, having just seen Appellant snort cocaine, asked him for some; Appellant gave them cocaine to snort off a key.

Additionally, Appellant arranged with a fellow Airman to get cookies containing marijuana for his girlfriend and her friend. While Appellant intended to distribute to them cookies containing marijuana, the cookies he purchased and gave to them may not have contained marijuana or any other controlled substance.

Appellant was apprehended soon after he purchased cocaine and MDMA for Ms. H. Appellant was driving away from his drug dealer's apartment in St. Louis, Missouri, and pulled his car over after he saw police lights.[5] He put the bag of drugs into his mouth to swallow them so the agents could not seize them; he was unsuccessful. After waiving his rights under Article 31, UCMJ, 10 U.S.C. § 831, Appellant provided statements to AFOSI agents about his drug involvement.

The specifications referred to trial alleged misconduct that occurred between September 2018 and January 2019. Appellant did not elect 2019 sentencing procedures under Rule for Courts-Martial (R.C.M.) 902A(b). Appellant

---

defer and waive forfeitures only. The convening authority's decision on Appellant's request to waive forfeitures warrants no further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

[5] Agents from the United States Drug Enforcement Administration were supporting AFOSI agents in this investigation.

was sentenced on 22 August 2019. The convening authority signed his decision on action memorandum (Action) on 28 October 2019. The military judge signed the EoJ on 11 December 2019. Trial defense counsel received the Action and EoJ on 11 December 2019, and did not file a post-trial motion for correction of either document. On about 18 December 2019, the court reporter certified the record of trial. On 5 February 2020, the record of trial was docketed with our court.

## II. DISCUSSION

### A. Unreasonable Multiplication of Charges

#### 1. Additional Background

Specification 5 of Charge II alleged Appellant wrongfully distributed cocaine on divers occasions. Specification 7 of Charge II alleged Appellant wrongfully introduced some quantity of cocaine onto Scott AFB *with the intent to distribute* the cocaine. These specifications read as follows:

> Specification 5: In that [Appellant] . . . did, at or near Scott [AFB], Illinois, on divers occasions, between on or about 1 October 2018 and on or about 30 November 2018, wrongfully distribute cocaine.

> Specification 7: In that [Appellant] . . . did, at or near Scott [AFB], Illinois, between on or about 1 November 2018 and on or about 31 December 2018, wrongfully introduce an unknown quantity of cocaine onto an installation under control of the armed forces, to wit: Scott [AFB], Illinois, with the intent to distribute the said controlled substance.

During the guilty-plea inquiry, Appellant clarified that he introduced the cocaine onto Scott AFB in order to distribute it, and this distribution was one of the four occasions charged in Specification 5 of Charge II to which he pleaded guilty. Appellant explained SrA VR wanted to get cocaine for herself and Ms. H, and they gave Appellant $80.00. Either SrA VR or Ms. H suggested they meet on base for Appellant to provide them the cocaine after he purchased it. As Appellant "was already headed back to base and they were at base," he agreed. Appellant explained "[t]he only reason [he] was bringing it onto base was to give it to [Ms. H] and [SrA VR]."

Shortly before trial began, Appellant filed a "Defense Motion for Appropriate Relief IAW [R.C.M.] 906(b)(12) – Unreasonable Multiplication of Charges." Appellant's requested relief was merger of Specifications 2 and 3 of Charge I (attempted distribution of MDMA and cocaine) and merger of Specifications 5 and 7 of Charge II for sentencing. The Government opposed. The military judge

issued his ruling in writing during trial, granting the Defense's motion regarding Specifications 2 and 3 of Charge I, and denying the motion for Specifications 5 and 7 of Charge II.

In his ruling on the defense motion, the military judge found the cocaine distribution was "directly connected to the introduction offense." He also found the following facts:

> The second distribution occurred in early December 2018. On that occasion, [Appellant] provided approximately one gram of cocaine to SrA VR and [Ms. H] while all three were located on Scott AFB, IL.
>
> . . .
>
> [Appellant] explained that introduction onto a military installation offense (Charge II, Specification 7) was connected to the second distribution mentioned . . . above, where [Appellant] provided one gram of cocaine to SrA VR and [Ms. H] while on Scott AFB, IL in early December 2018. On that occasion, after retrieving the cocaine from an off base source, [Appellant] drove the cocaine onto Scott AFB, in order to give it to [Ms. H] and SrA VR.

The military judge did not find as fact what time or where on Scott AFB the distribution occurred.

Applying the facts to the law, the military judge concluded:

> The offense of introduction onto a military installation with the intent to distribute occurred at least some period of time prior to actually distributing the cocaine, was a separate and specific criminal act and required separate intents and separate actions.
>
> . . .
>
> Applying the third, fourth, and fifth Quiroz[6] factors, this court finds that the number of charges and specifications overall, including the four identified in Defense's motion, do not misrepresent or exaggerate the appellant's[7] criminality, do not unreasonably increase the appellant's punitive exposure, and there is no evidence of prosecutorial overreaching or abuse in drafting the specifications. A number of the specifications are drafted as

---

[6] *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).

[7] The military judge used the word "appellant" and not the word "accused" in his analysis.

occurring "on divers occasions," including Charge II, Specification 5, which has the effect of limiting punitive exposure overall. The charges and specifications appear to only be separated as necessary to ensure the charged conduct is clear and specifications provide the needed flexibility for the exigencies of proof. Lastly, there is no evidence or indication that the prosecutors overreached or abused their discretion drafting these charge [sic] in an effort to increase the criminality of [Appellant].

Appellant alleges the military judge abused his discretion in denying the Defense's motion regarding Specifications 5 and 7 of Charge II. For the reasons below, we agree.

**2. Law**

We review a military judge's denial of relief for claims of unreasonable multiplication of charges for an abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012) (citations omitted). A military judge abuses discretion: (1) when the findings of fact upon which the ruling is predicated are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if the application of the correct legal principles to the facts is clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Rule for Courts-Martial 307(c)(4) provides in pertinent part: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The Government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994), *overruled on other grounds by United States v. Miller*, 67 M.J. 385, 388–89 (C.A.A.F. 2009); *see also* R.C.M. 906(b)(12). Remedies for unreasonable multiplication of charges include merger and dismissal. *See Campbell*, 71 M.J. at 22–23.

A military judge considers the following non-exhaustive list of factors when analyzing unreasonable multiplication of charges: (1) whether each charge and specification is aimed at distinctly separate criminal acts; (2) whether the number of charges and specifications misrepresents or exaggerates the accused's criminality; (3) whether the number of charges and specifications unreasonably increases the accused's punitive exposure; and (4) whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charge. *Id.* at 24 (citing *United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001)). "In *Quiroz*, [the United States Court of Appeals for the Armed Forces (CAAF)] endorsed several factors iterated by the lower court in that case as a guide for military judges and appellate courts to consider in determining whether there

has been an unreasonable multiplication of charges, including the fact that these factors are not 'all-inclusive.'" *Id.* at 23 (citation omitted).

The Courts of Criminal Appeals (CCA) have additional considerations, including whether the appellant objected at trial. *See United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004). "Ultimately, with respect to both the findings and the sentence, 'the application of the *Quiroz* factors involves a reasonableness determination . . . and is a matter well within the discretion of the CCA in the exercise of its Article 66(c) . . . powers.'" *United States v. Forrester*, 76 M.J. 389, 394 (C.A.A.F. 2017) (alterations in the original) (quoting *United States v. Anderson*, 68 M.J. 378, 386 (C.A.A.F. 2010)).

In *United States v. Spann*, No. 200300968, 2004 CCA LEXIS 261 (N.M. Ct. Crim. App. 29 Nov. 2004) (unpub. op.), our sister CCA considered a similar allegation of unreasonable multiplication of charges. It found "the aggravating language 'with the intent to distribute' in Specification 1 (introduction) of Charge II is an unreasonable multiplication of Specification 2 (distribution) of Charge II and should be dismissed." *Id.* at *5. The court's conclusion was narrowed to the facts of the case, "particularly the close proximity in time of the introduction and the distribution." *Id.* at *6. The appellant in *Spann* "left base, made contact with a drug dealer, obtained the marijuana, drove back onto base, met at a pre-arranged location, and delivered the marijuana. The delivery occurred about 15 minutes after returning to base." *Id.* at *4.

The elements of wrongful introduction of a controlled substance are: (1) that the accused introduced onto a vessel, aircraft, vehicle, or installation used by the armed forces or under the control of the armed forces a certain amount of a controlled substance; and (2) that the introduction was wrongful. *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶ 37.b.(4). The elements of wrongful introduction of a controlled substance with the intent to distribute include the first two elements of wrongful introduction, with the addition of an aggravating factor: (3) that the introduction was with the intent to distribute. 2016 *MCM*, pt. IV, ¶ 37.b.(6). The elements of wrongful distribution of a controlled substance are: (1) that the accused distributed a certain amount of a controlled substance; and (2) that the distribution by the accused was wrongful. 2016 *MCM*, pt. IV, ¶ 37.b.(3). For these offenses, "distribution" means to deliver to the possession of another. 2016 *MCM*, pt. IV, ¶ 37.c.(3). Cocaine is a controlled substance. 2016 *MCM*, pt. IV, ¶ 37.c.(1).

The maximum term of confinement for wrongful introduction of cocaine onto an installation is five years. 2016 *MCM*, pt. IV, ¶ 37.e.(1)(a). When the sentence aggravator of "with the intent to distribute" is added, the maximum term of confinement increases to 15 years. 2016 *MCM*, pt. IV, ¶ 37.e.(2)(a). The maximum term of confinement for wrongful distribution of cocaine is 15 years. *Id.*

### 3. Analysis

The military judge used incorrect legal principles in his denial of the Defense's motion. Moreover, we find his conclusions unreasonable.

The military judge concluded "the number of charges and specifications overall . . . do not unreasonably increase the appellant's punitive exposure." However, the military judge did not address in his ruling the aggravating sentence factor of "with intent to distribute" that the Government alleged and proved in the wrongful introduction specification. He did not consider whether it was unreasonable to subject Appellant to 15 years' confinement—and not 5 years—for introducing cocaine onto base when he intended to immediately distribute it, when Appellant also was subject to 15 years' confinement when he did immediately distribute it.

The military judge found the introduction "occurred at least some period of time prior to actually distributing the cocaine," but did not make a finding about how much time passed. His finding that "at least some period of time" passed is unhelpful, as this is also true of possession with intent to distribute followed by distribution, which courts have found to be multiplicious, not merely an unreasonable multiplication of charges. *See, e.g.*, *United States v. Savage*, 50 M.J. 244 (C.A.A.F. 1999). Based on the military judge's incomplete findings of fact, we are unable to discern the "proximity in time of the introduction and the distribution." *See Spann*, unpub. op. at *6. However, we glean from the military judge's ruling that he found Appellant entered the base then immediately met with SrA VR and Ms. H and distributed to them some cocaine.

Finally, the military judge did not acknowledge that the *Quiroz* factors were only factors and not an exhaustive list. He said the CAAF "endorsed a five-part *test*" (emphasis added), then listed the five *factors* identified for appellate courts to consider.[8] The military judge stated, "[t]hese factors must be balanced, with no single factor necessarily governing the result," with no acknowledgement that other factors could be considered as well. We find the military judge erroneously concluded the *Quiroz* factors were an all-inclusive test.

In conclusion, we find the military judge abused his discretion in denying the defense motion to merge Specifications 5 and 7 of Charge II. His finding of facts about the timing of the introduction and distribution were inadequate. More importantly, however, from our review of the record he had an incorrect

---

[8] In considering a defense motion at trial, military judges consider four factors, and not "whether the accused objected at trial," as the military judge did here. *See, e.g.*, *Campbell*, 71 M.J. at 24.

understanding of the legal principles in *Quiroz*. We find his failure to consider the effect of the sentence aggravator was unreasonable.

This unreasonable multiplication of charges requires remedy. Appellant requests we grant him sentence relief. We have determined the most appropriate remedy in this case is to dismiss the sentence-aggravating language "with the intent to distribute" from Specification 7 of Charge II.[9]

**B. Sentence Reassessment**

Following our decision regarding unreasonable multiplication of charges, we consider the reassessment of Appellant's sentence. Under Article 59(a), UCMJ, 10 U.S.C. § 859(a), a court-martial sentence may not be held incorrect by virtue of legal error "unless the error materially prejudices the substantial rights of the accused." If we can conclude that an adjudged sentence would have been at least a certain severity, absent any error, "then a sentence of that severity or less will be free of the prejudicial effects of error; and the demands of Article 59(a) will be met." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

In deciding whether to reassess a sentence or return a case for a rehearing, we consider the totality of the circumstances, including the following factors: (1) "Dramatic changes in the penalty landscape and exposure;" (2) "Whether an appellant chose sentencing by members or a military judge alone;" (3) "Whether the nature of the remaining offenses capture[s] the gravamen of criminal conduct included within the original offenses and . . . whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;" and (4) "Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013) (citations omitted). We may only reassess a sentence if we "confidently can discern the extent of the error's effect on the sentencing authority's decision." *United States v. King*, 50 M.J. 686, 688 (A.F. Ct. Crim. App. 1999) (en banc) (quoting *United States v. Reed*, 33 M.J. 98, 99 (C.M.A. 1991)).

Based on his ruling on the Defense's motion for unreasonable multiplication of charges, the maximum sentence the military judge considered included

---

[9] We considered whether *United States v. Wheatcraft*, 23 M.J. 687 (A.F.C.M.R. 1986), requires us to set aside the conviction for introduction of cocaine with the intent to distribute. We find it does not; its finding of multiplicity is limited to the facts of the case, and its resolution of the issue is contrary to the CAAF's subsequent decision in *Campbell*. 71 M.J. at 23–24.

85 years' confinement and a dishonorable discharge. Without the sentence aggravator in Specification 7 of Charge II, the maximum term of confinement was 75 years. Trial counsel argued for "no less than" three years and four months of confinement; trial defense counsel argued for "at least" four months of confinement plus hard labor without confinement. The military judge sentenced Appellant to ten months' confinement for Appellant's multiple distributions of cocaine and uses of cocaine, multiple uses of LSD, use of MDMA and Adderall, introduction of cocaine onto an Air Force base, attempting to distribute cocaine and MDMA, and attempting to dispose of the cocaine and MDMA he attempted to distribute so it could not be seized. Appellant had a record of performance problems throughout his career, including while awaiting trial, as evidenced by five letters of counseling, four letters of reprimand, nonjudicial punishment, and lackluster performance reports. Appellant introduced three letters attesting to his good character, Afghanistan and NATO medals, photos, and an unsworn statement.

Considering the principles set out above, we conclude we can reassess Appellant's sentence in light of the modification to Specification 7 of Charge II. Appellant remains convicted of the same offenses; he introduced cocaine onto an Air Force base and distributed the cocaine. Such drug offenses are not unfamiliar to this court. The evidence supporting the offenses for which Appellant was convicted and sentenced has not changed. The maximum imposable sentence has changed, but still is far greater than the sentence adjudged. The military judge found the "charges and specifications appear to only be separated as necessary to ensure the charged conduct is clear and specifications provide the needed flexibility for the exigencies of proof," and not that they warranted separate punishments. We reassess Appellant's sentence, and conclude the military judge would have imposed the same sentence had he merged Specification 7—or just the dismissed language—with Specification 5. *See United States v. Cook*, 48 M.J. 434, 438 (C.A.A.F. 1998).

**C. Action on Deferment Request**

**1. Additional Background**

Appellant, through his trial defense counsel, requested the convening authority defer and waive the forfeitures of pay pursuant to Articles 57(b) and 58b, UCMJ, 10 U.S.C. §§ 857(b), 858b. He made the request on behalf of his wife. He did not state definitively whether he provided her any financial support; the request stated, "While [Appellant's] wife is a military member herself, she would normally be entitled to having [Appellant's] financial support as his dependent despite earning her own pay." In a memo to the convening authority

styled "Staff Judge Advocate's Recommendation"[10] (SJAR), the acting staff judge advocate detailed the factors to consider when acting on requests for deferment and waiver, specifically citing and identifying the factors in R.C.M. 1103(d)(2) and 1103(h). The SJAR noted Appellant presented no evidence that his wife could not support herself without Appellant's income, and recommended the convening authority deny the requests. In an addendum to the SJAR, the staff judge advocate noted that Appellant did not submit any other matters or information for the convening authority's consideration, nor comment on the recommendation that the request for deferment and waiver of forfeitures be denied. The addendum to the SJAR stated, "I recommend you deny the Accused's request to defer both the adjudged and mandatory forfeitures, deny the Accused's request to waive the mandatory forfeitures, and take no action on the findings or sentence in this case."[11]

In his Action, the convening authority stated "I do not intend to grant nor have I previously granted any deferments or waivers of forfeitures."[12] The EoJ reflects "N/A" for deferment of forfeitures and waiver of automatic forfeitures.[13]

On 19 February 2020, we ordered the Government to show cause why we should not return the record to the court reporter for attachment of matters submitted by Appellant pursuant to R.C.M. 1106. In response, the Government stated Appellant's request for deferment and waiver of forfeitures was the entirety of Appellant's post-trial submission to the convening authority. We granted the Government's accompanying motion to attach a declaration from the Chief of Military Justice at Scott AFB, with its attachments,[14] in which he

---

[10] We note that no provision in the 2019 *MCM* requires an SJAR or addendum, but either or both may be appropriate under the circumstances of a particular case.

[11] We find no error in the convening authority's decision to "take no action." *See United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.).

[12] The convening authority did not disapprove or suspend the adjudged forfeitures, which would be a necessary predicate to granting a waiver of mandatory forfeitures. *See United States v. Emminizer*, 56 M.J. 441, 445 (C.A.A.F. 2002).

[13] Appellant requests the EoJ be corrected to document Appellant's request for deferment and waiver of forfeitures, and the convening authority's action on Appellant's request for deferment as required by R.C.M. 1111(b)(3)(A). We agree and direct a modification to the EoJ in our decree.

[14] The attachments contained Appellant's request for deferment and waiver of forfeitures, the SJAR, the addendum to the SJAR, the convening authority's Decision on Action memorandum, and the e-mail dated 3 September 2019 with which Appellant's trial defense counsel submitted his request for deferment and waiver to the then-Chief

stated Appellant "did not request clemency" but did request deferment and waiver of forfeitures. He did not state whether the convening authority put into writing the basis for denial of the deferment request.

Similarly, we granted Appellant's motion to attach a declaration from his trial defense counsel, another copy of Appellant's request for deferment and waiver of forfeitures, and e-mails between trial defense counsel and the then-Chief of Military Justice at Scott AFB regarding the time period to submit matters. The trial defense counsel submitted the request for deferment and waiver of forfeitures the duty day after "submission of matters" was due—ten days after the sentence was announced, *see* R.C.M. 1106(d)(1); she did not comment on whether she submitted any other matters for the convening authority's consideration.

**2. Law**

Article 57(b)(1), UCMJ, 10 U.S.C. § 857(b)(1), authorizes a convening authority, upon application by the accused, to defer a forfeiture of pay or allowances until the date of EoJ. R.C.M. 1103(d)(2) provides that an accused seeking to have a punishment deferred "shall have the burden of showing that the interests of the accused and the community in deferral outweigh the community's interests in imposition of the punishment on its effective date." The rule outlines several factors which the convening authority may consider in determining whether to grant the request, including *inter alia* the nature of the offenses, the sentence adjudged, the effect of deferment on good order and discipline in the command, and the accused's character, mental condition, family situation, and service record. The action of the convening authority on the deferment request shall be in writing, included in the record of trial, and provided to the accused and military judge. R.C.M. 1103(d)(2).

To "correct an error in the action of the convening authority," a party may file a post-trial motion within five days of receiving the convening authority's action. R.C.M. 1105(b)(2)(B). If the military judge finds "any post-trial action by the convening authority is incomplete, irregular, or contains error," the military judge may return the action to the convening authority for correction. *Id.*

We review a convening authority's denial of a deferment request for an abuse of discretion. *United States v. Sloan*, 35 M.J. 4, 6 (C.M.A. 1992), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F.

---

of Military Justice at Scott AFB. We note an additional attachment contained an e-mail string from December 2019 between trial defense counsel and the Chief of Military Justice concerning deferment, waiver, and clemency in an unrelated case.

2018); R.C.M. 1103(d)(2). In order for appellate courts to determine whether the convening authority's denial was an abuse of discretion, the convening authority's action "must include the reasons upon which the action is based." *Sloan*, 35 M.J. at 7 (footnote omitted).[15] When a convening authority fails to set out reasons for denying a deferment request, we look for indications the convening authority considered relevant factors such as those in R.C.M. 1103(d)(2) or considered advice presented by the staff judge advocate or the special court-martial convening authority. *See United States v. Frantz*, No. ACM 39657, 2020 CCA LEXIS 404, at *57 (A.F. Ct. Crim. App. 10 Nov. 2020) (unpub. op.). Additionally, relief is warranted upon "credible evidence that a convening authority denied a request to defer punishment for an unlawful or improper reason . . . ." *United States v. Eppes*, No. ACM 38881, 2017 CCA LEXIS 152, at *43 (A.F. Ct. Crim. App. 21 Feb. 2017) (unpub. op.) (citing *United States v. Zimmer*, 56 M.J. 869, 874 (A. Ct. Crim. App. 2002)), *aff'd*, 77 M.J. 339 (C.A.A.F. 2018).

### 3. Analysis

Appellant claims the convening authority abused his discretion by denying the request for deferral of forfeitures, and he suffered prejudice as a result. As to prejudice, he claims, "If the convening authority approved the deferment in rank and forfeitures, [Appellant's] wife would have received his pay for up to six months. Due to the convening authority's unexplained denial of [Appellant's] request, his wife was denied financial support."

In his request to the convening authority, rather than address his burden under R.C.M. 1103(d)(2) to show that his and the community's interest in deferral "outweigh the community's interests in imposition of the punishment on its effective date," Appellant instead argued the resulting sentence would still meet the "five principles of sentencing." Even now on appeal Appellant does not acknowledge his burden, stating "[t]here was simply no reason to deny [Appellant's] request to defer automatic forfeitures."

The SJAR identified reasons the convening authority should deny Appellant's request for deferment:

> [Appellant's] spouse is an active duty Airman stationed at Seymour Johnson AFB. [Appellant] does not have any other dependents. . . . [Appellant's] spouse is currently employed and receiving her own pay and allowances. [Appellant] has presented no

---

[15] Neither Article 57(b), UCMJ, 10 U.S.C. § 857(b), nor R.C.M. 1103(d)(2) or its Discussion states the basis for denial should be in writing. We note the CAAF has not repeated this requirement since *Sloan*, which it overruled on other grounds, and we question the necessity for this judicially created rule in today's post-trial landscape.

evidence indicating she would be incapable of supporting herself without his income. Moreover, if you approve the deferment of pay and allowances, [Appellant] is not obligated to provide that money to his spouse. Given the severity of [Appellant's] misconduct and a lack of evidence demonstrating his spouse will suffer an undue hardship, I recommend you deny this request.

We can look to the SJAR and the addendum thereto to discern the convening authority's basis for denial of deferment of forfeitures. The SJAR listed all the factors contained in R.C.M. 1103(d)(2) for the convening authority's consideration, and identified Appellant's burden. It provided an explanation for its recommendation to the convening authority to deny the request. The addendum advised the convening authority Appellant submitted no additional matters, then repeated the recommendations from the SJAR. The record indicates no unlawful or improper purpose behind the convening authority's denial. The convening authority did not abuse his discretion in denying Appellant's request to defer forfeitures of pay and allowances.

Because the Defense did not move for correction of the Action in which the convening authority denied the request for deferral of forfeitures without explanation, we consider the issue forfeited. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). We review forfeited rights for plain error. *Id*. In analyzing for plain error, we assess whether "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Kho*, 54 M.J. 63, 65 (citations omitted). Considering post-trial processing has changed significantly since *Sloan*, we will assume without deciding that *Sloan* required the action of the convening authority in this case to include the reasons for denial of the request to defer forfeitures, and that failure to do so is plain and obvious error.

We find Appellant has failed to demonstrate even a colorable showing of possible prejudice resulting from this error. Appellant was given an opportunity to challenge the SJAR's reasons for recommendation of denial of his deferment request, and did not. He presented nothing else to the convening authority for his consideration before the convening authority made a decision on the request. Appellant has not shown how this error potentially affected his opportunity for clemency. *See United States v. Zegarrundo*, 77 M.J. 612, 614 (A.F. Ct. Crim. App. 2018).

Having considered the totality of the record, we conclude Appellant has failed to demonstrate prejudice—and we find no colorable showing of possible prejudice—arising from the convening authority's failure to state his reasons for denying the requested deferment. Furthermore, we find the convening authority did not abuse his discretion by denying the requested deferment.

**D. Post-Trial Processing Delay**

Appellant argues he is entitled to relief due to post-trial processing delays, citing *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). In *United States v. Moody-Neukom*, this court addressed issues regarding entries of judgment in place of the convening authority's action and how future post-trial processing should be analyzed under *Moreno*:

> In *Moreno*, the CAAF identified thresholds for facially unreasonable delay for particular segments of the post-trial and appellate process. Specifically, the CAAF established a presumption of facially unreasonable delay where the convening authority did not take action within 120 days of the completion of trial, where the record was not docketed with the court of criminal appeals within 30 days of the convening authority's action, or where the court of criminal appeals did not render a decision within 18 months of docketing. . . . [A]dapting the *Moreno* analysis to the new rules will not be a simple matter of substituting the military judge's "entry of judgment"—or the convening authority's decision whether to take action on the trial results, or the certification or completion of the record of trial, or any other post-trial event—into the place of "convening authority action" within the *Moreno* framework for determining facially unreasonable delay.

No. ACM S32594, 2019 CCA LEXIS 521, at *4 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.) (citations omitted).

This court took a step further in *United States v. Livak*, stating "[w]e can apply the aggregate standard threshold the majority established in *Moreno*: 150 days from the day [the a]ppellant was sentenced to docketing with this court. This 150-day threshold appropriately protects an appellant's due process right to timely post-trial and appellate review and is consistent with our superior court's holding in *Moreno*." No. ACM S32617, 2020 CCA LEXIS 315, at *6–7 (A.F. Ct. Crim. App. 14 Sep. 2020) (unpub. op.) (citation omitted).

Applying *Livak*, we find a facially unreasonable delay. Appellant's trial concluded on 22 August 2019 and the convening authority effectuated the sentence by his Action on 28 October 2019. The military judge signed the EoJ on 11 December 2019; the court reporter certified the record of trial on 18 December 2019. The record was docketed with this court on 5 February 2020. From the conclusion of trial to the docketing of Appellant's case with this court, 167 days passed, which is more than the 150 days for a threshold showing of facially unreasonable delay.

Having found there was a facially unreasonable delay, we have assessed whether there was a due process violation by considering the four *Barker*[16] factors the CAAF identified in *Moreno*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136.

However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an Appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

While the first two factors weigh in favor of Appellant, the last two factors weigh against him. He did not assert his right to speedy post-trial processing to the convening authority. We find no oppressive incarceration nor impairment of the Defense at a rehearing. *See id.* at 140. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has articulated no such particularized anxiety in this case, and we discern none. We find neither qualifying prejudice from the delay nor a particularly egregious delay here. *See Toohey*, 63 M.J. at 362.

Recognizing our authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

## III. CONCLUSION

The finding of guilty to Specification 7 of Charge II is affirmed except the words, "with the intent to distribute." The finding as to the excepted words is **SET ASIDE** and **DISMISSED WITH PREJUDICE**. The approved findings, as modified, and the sentence, as reassessed, are correct in law and fact, and

---

[16] *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).

no further error materially prejudicial to the substantial rights of Appellant occurred.[17] Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings, as modified, and the sentence, as reassessed, are **AFFIRMED**.[18]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[17] As discussed in this opinion, the EoJ failed to document Appellant's request for deferment and waiver of forfeitures, and the convening authority's action on Appellant's request for deferment as required by R.C.M. 1111(b)(3)(A). We direct the military judge, through the Chief Trial Judge, Air Force Trial Judiciary, to have a detailed military judge correct the EoJ accordingly and prior to completion of the final order under R.C.M. 1209(b) and Department of the Air Force Instruction 51-201, *Administration of Military Justice*, Section 14J (18 Jan. 2019, DAFGM 2020-03, 24 Nov. 2020).

[18] The statement of trial results failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice and we find none. *See Moody-Neukom*, unpub. op. at *2–3.